THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE  LR 5.4
(Rule Number/Section)

ORIGINAL

FILED ___ LODGED
___ RECEIVED ___ COPY

MAY 1 5 2017

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

Terry James
1085 Chaparral Dr. # 5
BHC, AZ 86442
harold_james@sbcglobal.net
928.219.0752

Plaintiff, Pro Se

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terry Harold James, | ) |
| Plaintiff, | ) ) ) |
| v. | ) |
| | ) No. CV17-08063-PCT-DGC |
| Chief of Police Williamson; | ) |
| Officer Janine Robinson; | ) |
| Officer Roland Gutierrez; | ) |
| Officer Chase Hancock; | ) |
| Sgt. Brian Schlener; | ) |
| Officer Sean O'Connell ; | ) |
| Corporal Michael Senio; | ) |
| Officer Eric Teague; | ) PLAINTIFF'S FIRST AMENDED COMPLAINT |
| Officer Kenneth Williams; | ) |
| Officer Nathaniel Lolovich ; | ) |
| Officer Scott Grigsby; | ) |
| Officer Bradley Oliver; | ) |
| Officer Guerrera | ) |
| Officer David Corneilius; | ) |
| Sgt. Troy Teske; | ) |
| Kendra Herberer, P.D. Clerk; | ) |
| Judge Peter Psoreas; | ) |
| Judge Steven Conn; | ) |
| Deputy County Attorney Schoppmann; | ) |
| Brent Pearo; | ) |
| Yacenia Alvarez-Garcia; | ) |
| Danielle Olson; | ) |
| Joshua Hurtado; | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

1) This honorable Court has jurisdiction over this matter pursuant to 42 U.S. Code 1985 and 1983, 4.5, 4.6, 4.9 and 4.11.1.

2) The Plaintiff and the Defendants are all residents of Mohave County, Arizona, and citizens of the United States of America.

3) The Chief of Police Williamson of Bullhead City, Arizona, and the other defendants, have violated Plaintiff's Civil Rights as outlined under 42 U.S. Code, Section 1983 and 1985; by filing false arrest charges against the Plaintiff on February 5, 2017; and by malicious prosecution; and by falsifying documents; and by tampering with audio recordings and altering Police Reports; and by committing perjury; and by illegal search and seizure; and by the use of unnecessary force; and by withholding exculpatory evidence from Plaintiff in the resulting criminal action against Plaintiff, which threatens Plaintiff's very life, even though he is completely innocent of these charges. All but four were acting in their capacities as Officers of the law, including the two Judges and the Deputy County Attorney; and all have refused to look into the matter; despite repeated attempts by Plaintiff on the record, and in various motions to the Courts, asserting no investigation, and then a cover up of the illegal acts of the various defendants; which leads Plaintiff to believe there is a conspiracy to deprive him of his Constitutional Rights. The County Attorney has refused Plaintiff's request for a polygraph examination four times, for which the Plaintiff has offered to pay.

4) Plaintiff has attached two sets of the same Police Reports, wherein the reports have been altered in a brazen attempt to cover up the fact that no investigation was done by the Police. One report was turned over to Plaintiff by County Attorney Schoppmann as part of discovery.

The second report was obtained by Plaintiff from the Police Department at a later date. The differences are obvious and staggering, including pages missing and pages altered. Too many to name.

And the Police Reports even contradict each other over and over.

And they cannot both be true and accurate. Plaintiff has labeled them "A" and "B."

Many of the reports refer to Plaintiff's long and extensive history of mental and drug abuse problems, in an attempt to bootstrap these illegal actions taken against Plaintiff, and then use the system to bury the Plaintiff. Every report has innuendo and rumor about the Plaintiff, not hard evidence.

There is not one piece of credible evidence to back the defamatory statements in the Police Reports. These are sworn documents. That is perjury. Every report filed by every Officer is similar.

Plaintiff has a spotless record, with not so much as a traffic ticket in over 30 years.

Plaintiff invites this honorable Court to search any record for any hint of mental or drug problems on the part of the Plaintiff.

Plaintiff's birth date is 04/05/1956, in Midland, Texas.

Plaintiff's Social Security Number is 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.

5) Plaintiff has attached two recordings of the same 911 call Plaintiff made to dispatch in the early morning on November 5, 2017, both of which have been altered to such an extent they don't even match each other. Both have been altered to completely leave out Plaintiff's exculpatory statements made to the unknown dispatcher. And the timing voice mechanism present on all other recordings is not present on either of these, which is a clear indication of tampering by somebody.

6) Plaintiff has attached the illegal warrant signed by Judge Psoreas. The seizure list shows there was no evidence from which to base the probable cause necessary for the warrant's issuance.

7) Plaintiff has attached a copy of the hearing before Judge Conn, which was very contentious. It shows that Plaintiff has brought these same matters to the attention of the Superior Court, and the Prosecuting Attorney, and was not even given the dignity of a reply most of the time.

8) Every Defendant knows, or should have known, that Plaintiff is completely innocent of every charge. The Police Department did not ask the "victims" a single question to ascertain if they were telling the truth, but jumped to the wrong conclusions and over-reacted. Plaintiff has attached the "victims" written statements, which show on their face there is absolutely no proof of any crime committed by the Plaintiff, but merely speculation and conjecture on the part of the "victims."
The "victims" are so upset at the crime, they go to walmart and rent a movie. The Police know these victims are lying. One of the victims has been convicted five times. But local law enforcement jumped on the chance to teach Plaintiff a lesson for demanding the Police fill out reports correctly, and conduct proper investigations, that are impartial and look for real evidence. Not trying to find evidence to support conclusions reached on the way to the scene. Local law enforcement, with the help of the local government, are now trying to cover up their own illegal actions, taken as a result of an investigation that really was non-existent, based solely on the word of two people that Plaintiff has never even met and does not even know their names, without the slightest bit of corroborating evidence.

9) Plaintiff has continuously requested the video and audio from the over 20 Officers at the scene, and from the hospital emergency room, and from the entrance to the holding cell in Bullhead City; all of which will show the treatment Plaintiff received at the hands of the Officers.
Not one video or audio recording has been produced thus far. And never will be.
The Superior Court Judge says he will "sanction" the state, if Plaintiff follows the rules and satisfies

the necessary requirements; and holds his mouth just right. Plaintiff is not holding his breath waiting. This Court may read for itself the transcript, which Plaintiff admits is disrespectful and angry.

10) The Plaintiff believes the cause of all of this is the Plaintiff appearing before City Council on several occasions and challenging the Chief of Police and the Mayor to obey the laws of the U.S. Constitution, and even saying the Mayor should fire the Chief the next time the Chief asks him to violate the U.S. Constitution.

11) The Plaintiff is an activist, that cut his teeth on the grass roots movements of the sixties and seventies. The Plaintiff believes rules are made so that people can live together in peace and harmony. The "victims" and their roommates do not like to follow any rules, which brings them into conflict with Plaintiff. When the Police came into contact with the victims a marriage of evil was born, one hand washing the other for the same purpose, to teach Plaintiff a lesson. The "victims" have not even applied for a restraining order. But their roommates have, using lies and innuendo and rumor. Just like what the "victims" and the Police Department have been doing. Birds of a feather found each other and formed a symbiotic relationship.

12) And what a coincidence. Judge Psoreas, who signed the illegal warrant to tear my apartment to pieces, ignored the perjury by Mr. Hurtado, wherein he says I talked to him on January 18 about an incident that did not even happen until February 5, and statements from Ms. Olson that I had always treated them with courtesy and respect; and kept the injunction in effect, which was issued with no notice to Plaintiff; and which Plaintiff knew the Judge would never rule he made a mistake in issuing it in the first place. For this honorable Court's information, Plaintiff lives two doors down from the "victims." And continues to do so. The "victims" and their roommates taunt and sneer at

Plaintiff on a daily basis. They do not act like they are afraid of Plaintiff, even parking their car next to Plaintiff, instead of parking underneath the no parking signs while they work on their junk cars, like they usually do. And just throwing trash down anywhere they wish. And acting like trash themselves. Defendant Hurtado called Police on Plaintiff for taking his picture doing so. In that report, Officer Corneilius states that Defendant Hurtado says I shot at him earlier. Another total fabrication, not even questioned by Officer Corneilius or his direct Supervisor, a Sergeant, who is also listed as a Defendant. Officer Corneilius even ordered Plaintiff to stop his car and get out to "talk," then accuses Plaintiff of parking illegally. His supervisor, standing right there, and confronted by Plaintiff, as to if that is what he calls a fair and impartial investigation by one of his Officers, sneers at Plaintiff and condones this example of a fair and impartial investigation by the Bullhead City Police Department, probably because the Chief himself condones such behavior, and even encourages it.
The Chief of Police himself came to the scene, and without so much as a question, ordered swat in on the Plaintiff with no credible evidence whatsoever, seeing a chance to put Plaintiff in his place.
Either Officer Corneilius or Defendant Hurtado is lying. Probably both are.
And once again, these are sworn affidavits and sworn Police Reports.
You don't put guesses in sworn documents.
You put facts you swear to are true and accurate. Not-kind-of-sort-of-maybe-I-got-confused-statements-but-I-will-go-ahead-and-put-it-in-and-swear-to-it-cause-it-makes-me-look-good-and-Plaintiff-look-bad-statements.

13) And I have embarrassed the whole police department in a hearing before Judge Psoreas, in which it was discovered a restraining order had not been served in over two years, and counting, after

being signed by Judge Psoreas. I believe I said to Judge Psoreas that, "The guy is not gonna stand on a street corner with a sign around his neck saying, here I am. They might have to actually do some old fashioned Police work to serve the Restraining Order on this individual."

Once Plaintiff got on the bad side of the local police department, it was as if the Chief had held a meeting and had said, "let's get this guy, who is calling me out at City Council Meetings on TV."

14) The last time Plaintiff appeared before City Council and confronted the Chief and the Mayor about the U.S. Constitution was on October 18, 2016, which is easily accessible by this Court on the internet in the archives section of the Bullhead City City Council website.

Plaintiff speaks about 3 minutes into that video, right after the prayer and the pledge, because the Plaintiff is fond of saying, "everybody in the room knows the words to the prayer and the pledge, but I am the only one in the room that knows the meaning behind those words."

Plaintiff is limited to three minutes and usually gives time back to the King. I mean, the Mayor.

15) Plaintiff admits he is a tough guy, who does not like to be pushed around. Plaintiff further admits he does not like liars or lies, even little bitty white liars and lies. Plaintiff further admits he did hold off the local swat team for around five hours on Super Bowl Sunday Morning, February 5, 2017.

16) Plaintiff did so because he knew what was going to happen once he came out of the house and local law enforcement could get their hands on him, which was their intent from the beginning. First on the scene, Officers Robinson and Gutierrez. Plaintiff knew he was being set up, and did not want to surrender, because Plaintiff knew full well what was going to happen, due to other Police contacts in the past, in which Officers had consistently done no investigation or even asked a single question to any "Person of interest." Plaintiff has attached the restraining order signed by Judge

Psoreas, still unserved to this very day, and several Police Reports of previous times Plaintiff has called local law enforcement for assistance, only to have them become hostile and defensive, berating and belittling Plaintiff. Officers Hancock, O'Connell and Riger even failing to file a report of a death threat phoned to Plaintiff two or three days before this incident happening, which defendant reported to Officers Hancock and O'Connell, when they were issuing a traffic citation just feet from Plaintiff's front door. The next day, or maybe two days later, Plaintiff thought the Police were at his residence to update Plaintiff on the death threat. Plaintiff got the only report made, which was a report of the Plaintiff harassing the person whose number made the call of the threat. This reports says it was Officers Riger and O'Connell. It was not. It was Officers Riger and Hancock.

17) Officer Hancock saw the other person's number on Plaintiff's cell phone a day or two previous, when Plaintiff had insisted they make a report, so Plaintiff could have something in writing, like every time he has asked for assistance from the Police Department here. And every report is full of inaccuracies (lies) and misstatements and innuendos. And tries in subtle psychological ways to infer that Plaintiff is somehow the aggressor, or at best a confused drug addict, who is borderline crazy. Officers Riger and Hancock were actually trying to get the individual from whose phone the threat came to press charges against the Plaintiff, asking the woman three times to press charges against Plaintiff, and ignoring her statement that she does not have her phone with her most of the time, which means anybody could have used it to telephone those death threats to Plaintiff without her knowledge. Once again, no type of investigation into who might have had her phone when she did not, because the Officers already had their minds made up that Plaintiff was the "perp" and not the victim. Plaintiff has included that report by Officer Riger.

18) And Plaintiff will include one more report, even though Plaintiff is hesitant to ask this Court to read the voluminous attachments, which is a huge burden to this honorable Court; but which prove beyond any doubt Plaintiff's allegations of abuse and cover up; and just plain bad police procedure and protocol toward the people they should be assisting instead of arresting.

19) Plaintiff reported a road rage incident in which a gun was pointed at Plaintiff. Plaintiff drove to the Police Department parking lot and called the dispatch. Officer Guerrera responded to the parking lot and did what every other Officer has done in their report, made Plaintiff look like the bad guy, saying I was uncooperative and refusing to answer questions and just anything he could put in the report to make Plaintiff look bad.

But the bottom line is Officer Guerrera listed this incident as a traffic offense and did not even ask the other person one question and closed the case. Why? Plaintiff does not know this for a fact, but the person who pointed a gun at Plaintiff is listed on the report. Plaintiff is almost certain that person is a retired cop or an off-duty cop. Case closed. No charges even considered by Officer Guerrera, when Mr. McGiffen, or whatever his name is, should have immediately been arrested and charged, with much more evidence than the same Police Department used to unlawfully arrest, beat, illegally search and detain, and maliciously prosecute this Plaintiff for something every cop at the scene knows he did not do, as do both the trial court and the prosecuting attorney.

20) The "victims" say that Plaintiff shot at them and yelled at them from his balcony. From that balcony it is a physical impossibility to even see the "victims," who are around a corner and cannot see the Plaintiff, nor be seen by the Plaintiff. Every defendant knows that what the victims claim could not have happened. They simply don't give a damn, cause they want a piece of Plaintiff.

Well, they got a piece.

21) Plaintiff would ask this honorable Court to read the voluminous material, if it so pleases to find the truth, including the Police Reports that say the swat team caught Plaintiff in mid-air and softly lowered Plaintiff to the ground, after a five hour stand-off. And if this court believes that, then it is not necessary to read any more. Simply deny Plaintiff justice again. Plaintiff is getting used to it.

22) These actions have devastated Plaintiff's life, causing him bodily injuries from which he will never recover, loss of job, mental pain and anguish, loss of reputation, and personal embarrassment. Plaintiff has nearly gone insane, as many of the Police Reports indicate, from this incident. The effect of these baseless charges, the embarrassment, the loss of jobs and relationships by Plaintiff's own family members, who will not even speak to Plaintiff, because they think Plaintiff is a criminal and has mental and drug problems; and the beatings Plaintiff received at the scene, at the hospital and at the intermediate holding cell in Bullhead City before being transferred to Kingman, can never be compensated for. Strangers on the street point at Plaintiff and ask why Plaintiff did that. Plaintiff spent two or three days in jail. Plaintiff is not sure because he was semi-conscious from the beatings. They even confiscated Plaintiff's cats, and tortured them, which was the last straw.

23) But plaintiff does remember two incidents from the holding cell in BHC. Plaintiff regained consciousness enough to realize I had urinated all over myself. I stripped off my clothes and wrapped myself in a blanket thinner than this honorable Court will sleep on tonight. An Officer, whom I can not identify, came into the holding cell and asked Plaintiff if he had been masturbating. Plaintiff did not even understand the question for a few seconds, then responded no. The Officer ordered Plaintiff to put his clothes back on or he would be beaten again. Plaintiff wore

those clothes until he was released on P.R. Well, actually, Plaintiff was released on P.R. At 8:44 AM. But did not get released from the Kingman jail until around 5:30 PM. So plaintiff got to spend a whole day in jail, just for fun. I just wish this Court knew how much fun those days were, personally.

24) Plaintiff remembers one more thing from the holding cell in BHC. Detective Sevillano came to the cell while Plaintiff lay semi-conscious on the floor, where Plaintiff had been knocking at bottom of the door, repeatedly asking for help. When the detective opened the cell door, Plaintiff's hand must have fallen past the threshold, because Detective Sevillano said, "You better move your hand, or I am gonna slam the cell door on it." Plaintiff must have moved his hand, because it was not crushed by the cell door, as it would have been.

25) Plaintiff seeks damages in the amount of ten million dollars ($10,000,000.00), and an injunction to stop the unlawful and malicious prosecution of Plaintiff by the named Defendants, and a dismissal of all the criminal charges currently pending against Plaintiff connected in any way with his illegal arrest and illegal detainment and illegal search and seizure and illegal investigation and illegal beatings and illegal prosecution by said Defendants resulting from the incident on Super Bowl Sunday morning, February 5, 2017.

26) Plaintiff has tried very hard to familiarize himself with the Rules of Civil Procedure and U.S. Codes and the local Rules and the Federal Rules of Civil Procedure.
Plaintiff was a court reporter for over 33 years in the courts from Texas to Florida and back.
Plaintiff is not stupid.
Plaintiff now understands why most lawyers will not take a Federal Court case.

27) Plaintiff has been a little busy trying to keep from going to jail for a crime he did not

commit, trying to get his job back, trying to treat his injuries as best he could without funds, representing himself in his criminal case, until May 1, when his Public Defender and the Judge spent the Omnibus Hearing covering themselves from allegations of misdeeds, and did not address one issue that Plaintiff has been trying to seek redress for from the very first day, pro se, and for that very reason. Plaintiff's Public Defender is not aware of it as of this writing, but he is going to be fired at the next hearing for doing exactly what Plaintiff thought he would do.

28) Plaintiff does not think any one of these individuals is an evil person or a devil in disguise. Plaintiff thinks that each of the Defendants is a human being, and acting like a human being acts all the time, which is why our forefathers drafted a little thing called the U.S. Constitution so long ago. Plaintiff just wishes some Court would read it and follow the rules contained therein.

29) Plaintiff apologizes to this honorable Court for rambling so, and for the length of this document. But Plaintiff had much ground to cover, and not a whole lot of help.

30) And Plaintiff begs this high Court's patience and tolerance, as Plaintiff has been a little busy fighting several lawsuits arising from this incident, all pro se, and at this very moment Plaintiff's back is hurting to bad Plaintiff is going to have to take a break and ice down my back in order to finally finish this document, which Plaintiff refers to as Plaintiff's First Amended Complaint.

30) And Plaintiff would ask this honorable Court to suspend the local rules, as provided for in LRCiv 83.6; and to grant Plaintiff more time than usual in order to get service on any one particular person, and send the receipt for it back to the Clerk of this very honorable Court, as Plaintiff just found a process server in BHC; and more time to file a curative pleading in this case.

31) And Plaintiff would further ask this Court to accept this First Amended Complaint

as being perfected in all things and matters previously mentioned by this honorable Court, and cause it to be filed and be an official Pleading/complaint like any other; and to remind the Clerk of this Court of Rule 5.1(d)(4), wherein it states the Clerk must not refuse to file a paper, solely because it is not in the form prescribed by these rules, or a local rule or practice, as Plaintiff has spent many hours studying and trying to fix the defects in his original complaint, to the best of my ability. Plaintiff swears on his honor that every fact is true and correct as stated in his First Amended Complaint.

32) This is the most important matter in Plaintiff's life. David never had a Goliath so big. Plaintiff is very emotional about the possibility of going to jail for ONLY one to three years for something every person connected to this case knows Plaintiff did not do. The two or three days that Plaintiff spent in jail for the first time in his 61 years almost killed me. Plaintiff would not last two weeks in jail, with his attitude and personal affect. If the prisoners did not beat me to death some night in a cell where no camera can see, then the guards would.

33) Plaintiff would ask this Court to grant Plaintiff's prayer for relief as quickly as possible, with whatever modifications this Court deems necessary, in accordance with the Rules of Civil Procedure and all other applicable rules.

DATED this 12th day of MAY, 2017.

_____
Terry Harold James, Plaintiff, Pro Se